## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **STEPHEN E. BURRIK &** | : | |
| **INDIA R. BURRIK,** | : | **Bankruptcy No. 09-29569-BM** |
| | : | |
| Debtors. | : | |

......................................................:...............................................................................

| | | |
|---|---|---|
| **Sherwood Fine Art, Inc.,** | : | |
| Plaintiff, | : | **Chapter 7** |
| | : | |
| v. | : | |
| | : | **Adversary No. 10-2215-BM** |
| **Stephen E. Burrik & India R. Burrik,** | : | |
| Defendants. | : | |

Appearances:      Brian P. Cavanaugh, for Sherwood Fine Art, Inc.
                         Andrew M. Gross, for India and Stephen Burrik.

### <u>MEMORANDUM OPINION</u>

Sherwood Fine Art, Inc. (hereafter "Sherwood"), a creditor of the instant debtors (hereafter "the Debtors"), commenced the instant adversary proceeding in order (a) to oppose the entry of the Debtors' Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2) - (5), and, alternatively, (b) to obtain a determination that Sherwood's claim is excepted from the Debtors' discharge pursuant to 11 U.S.C. § 523(a)(4).

The Court held a trial on the matter, which trial commenced on April 18, 2011, and continued on to both April 19 and 20, 2011. For the reasons set forth below, the Court will grant the discharge of Mrs. Burrik and deny the discharge of Mr. Burrik. The Court also holds that, as to Mrs. Burrik, Sherwood's claim is discharged, that is such claim is not excepted from her discharge pursuant to

§ 523(a)(4). Because the Court denies the entry of Mr. Burrik's discharge,

Sherwood's § 523(a)(4) nondischargeability action against him is moot.

### STATEMENT OF FACTS

Mr. Burrik owned and operated what appear to be two separate art

galleries dating back to 1976, one in western Pennsylvania and the other in Key

West, Florida (hereafter "the Art Galleries"). The business of the art gallery in

western Pennsylvania was conducted exclusively from a facility located at 220

Willow Crossing Road, Greensburg, Pennsylvania (hereafter "the Commercial

Warehouse").

The art gallery in western Pennsylvania was conducted under several

different names, namely Thomas Kinkade Gallery, Thomas Kinkade Signature

Gallery, Westmoreland Galleries, LLC, Sportsman Specialties and Horizon

Galleries, LLC. Neither of the Debtors has registered the fictitious names of

Thomas Kinkade Gallery, Thomas Kinkade Signature Gallery or Horizon

Galleries, LLC with Pennsylvania's Department of State.

The Debtors filed a Chapter 7 bankruptcy petition on December 31, 2009.

On that same date Westmoreland Galleries, LLC also filed a Chapter 7

bankruptcy petition. At some point prior to December 31, 2009, the art gallery in

Key West, Florida was closed; it apparently operated under one or several of the

above-listed fictitious names while it was open.

The last amended Bankruptcy Schedule B of the Debtors reflects that Mr.

Burrik was the sole, 100% owner of both Westmoreland Galleries, LLC and

Horizon Galleries, LLC, and that Mrs. Burrik did not have an ownership interest in

2

either entity.  Such Schedule B says nothing about any ownership interest in any other entity under any of the other fictitious names set forth above.

The Bankruptcy Schedule B of Westmoreland Galleries, LLC reflects that the entire personalty of such debtor as of the date when it filed for bankruptcy consists entirely of $125,000 in artwork inventory and $10,000 in related business equipment.  Somewhat curiously, the same $135,000 in personalty is also listed as personalty owned by Mr. Burrik in the Debtors' last amended Bankruptcy Schedule B; in such schedule, Mrs. Burrik is not listed as the owner of any of such personalty.

Since October of 2007 all of the money generated from business conducted under any of the above-listed fictitious names was deposited into a business checking account under the name of Horizon Galleries, LLC.  Such business checking account was jointly owned by both of the Debtors, and both had the authority to deposit money into, and issue checks drawn upon, such account.  The Commercial Warehouse was also jointly owned by the Debtors at the time when they filed for bankruptcy.

When the Debtors filed for bankruptcy they owed S & T Bank approximately $700,040.94.  Such debt in the same amount is also listed as a debt of Westmoreland Galleries, LLC in its bankruptcy schedules.  To secure the debt owed to S & T Bank the Debtors granted two blanket mortgages to S & T Bank on both the Commercial Warehouse and their personal residence.  Such blanket mortgages also cover the $135,000 of personalty described above that remained from the business operations of the Art Galleries when the Debtors and

3

Westmoreland Galleries, LLC filed for bankruptcy.

Before the Debtors and Westmoreland Galleries, LLC filed for bankruptcy, Sherwood provided artwork to the Art Galleries pursuant to two consignment agreements between Sherwood, on the one hand, and Thomas Kinkade Gallery, on the other hand (hereafter "the Consignment Agreements"). Mr. Burrik personally guaranteed any liability of Thomas Kinkade Gallery under the Consignment Agreements. Mrs. Burrik did not execute any sort of personal guaranty with respect to the Consignment Agreements. Sherwood also sold some artwork to the Art Galleries on open account, that is on an unsecured basis rather than via consignment or on a secured basis.

On June 22, 2009, that is before the Debtors filed for bankruptcy, Sherwood obtained a $90,680.50 default judgment against both Mr. Burrik and Thomas Kinkade Gallery in a Minnesota state court. Such default judgment was subsequently recorded in the Westmoreland County, PA Prothonotary's Office on June 24, 2009.

The Debtors' individual income tax returns for the years 2007 - 2009 indicate that the Art Galleries, operating under the business name of Westmoreland Galleries, had gross sales of $1,027,547 in 2007, $337,537 in 2008, and $86,858 in 2009. The Debtors attribute the deterioration in sales for the Art Galleries between 2007 and 2009 to two factors. First, they contend that they were preoccupied for a substantial portion of such period by the hospitalization of their son, who suffered from a significant illness that ultimately claimed his life on February 28, 2011. Second, the Debtors contend that the

4

downturn in the United States economy in 2008 caused many people to simply

stop spending money on luxury items such as the artwork that was sold in the Art

Galleries.

When Mr. Burrik closed the art gallery in western Pennsylvania in late

2009 he turned the keys to the Commercial Warehouse over to S & T Bank, who

then took over possession of such facility because it constituted collateral for

their outstanding loan to the Debtors.  Mr. Burrik contends that he then left all of

the Art Galleries' inventory and other personalty behind at the Commercial

Warehouse given that the same also constituted collateral of S & T Bank.

Mr. Burrik contends as well that when he abandoned all of the foregoing in

favor of S & T Bank, he left behind all of the Art Galleries' remaining business

records.  Mr. Burrik maintains that it was only after Sherwood commenced the

instant adversary proceeding that he returned to the Commercial Warehouse to

find that such records had been thrown into a trash dumpster.  Mr. Burrik says

that he was able to retrieve some, but not all, of such business records.  In

particular, Mr. Burrik says that he was able to retrieve the 2008 Thomas Kinkade

Signature Gallery Check Detail, 2009 S & T Bank statements for the Horizon

Galleries, LLC checking account, some sales invoices for the years from 2007 to

2009, the Thomas Kinkade Gallery Transaction List by Vendor, 2009 receipts,

and a list of E-Bay sales.

Sherwood contends that Mr. Burrik did not, as he contends, abandon all of

the artwork inventory of the Art Galleries at the Commercial Warehouse prior to

his filing for bankruptcy.  Sherwood contends that Mr. Burrik instead retained

some portion of such artwork, including perhaps some of the artwork that Sherwood itself had either consigned or sold to the Art Galleries.  Part of the reason why Sherwood so contends is that Mr. Burrik appears to have continued to sell artwork subsequent to his having filed for bankruptcy.  Mr. Burrik responds by contending that all of Sherwood's aforesaid concerns can be easily explained, as is set forth in greater detail in the analysis of the instant opinion.

Another reason why Sherwood is suspicious as to whether Mr. Burrik has continued post-petition to possess and/or liquidate artwork inventory of the Art Galleries, rather than to have handed such property over to the Chapter 7 bankruptcy trustee for both his individual case and that of Westmoreland Galleries, LLC, is the state of the Art Galleries' records.  Mr. Burrik, as just set forth, contends that Sherwood's aforesaid suspicions can be easily allayed. However, Sherwood contends that many of Mr. Burrik's explanations cannot be verified by resort to the records that remain of the Art Galleries' business operations.  The Court will address in detail within the body of the analysis of the instant opinion the state of the Art Galleries' records.

Mr. Burrik testified at trial that there are several reasons for the state of the Art Galleries' records at the present time in addition to the aforesaid loss of some of such records when they were abandoned at the Commercial Warehouse.  In particular, Mr. Burrik testified that at some point prior to his filing for bankruptcy he sold the two computers that stored many of the Art Galleries' business records.  Mr. Burrik testified that neither he nor Mrs. Burrik removed such business records from such computers before the computers were sold.

6

Mr. Burrik also testified that (a) when the business operations of the Art Galleries were successful, which was at some point prior to 2008, he focused his efforts exclusively on sales and left the record keeping to a bookkeeper that he employed, (b) he had to lay off his bookkeeper when the business operations of the Art Galleries began to deteriorate, which was apparently in 2008, and (c) he was ill-equipped to handle such record keeping duties after his bookkeeper left. Mr. Burrik testified as well that his accountant, a CPA, let him go as a client in 2007 because Mr. Burrik could not afford to pay for the accountant's services.

The Debtors both testified that, with respect to the operations of the Art Galleries, Mrs. Burrik did nothing more than (a) plan for, and participate in the execution of, various events that were thrown by the Galleries, and (b) assist in the record keeping function of the Art Galleries after the aforesaid bookkeeper was laid off. Sherwood does not appear to seriously challenge the testimony regarding Mrs. Burrik's activities respecting the Art Galleries.

## DISCUSSION

Sherwood has pled causes of action against both of the Debtors pursuant to § 523(a)(4) and § 727(a)(2) - (5). The Court shall first address Sherwood's objection to the Debtors' discharges under § 727(a)(2) - (5) because, if such objection is sustained, then Sherwood's § 523(a)(4) nondischargeability action becomes moot, thereby relieving the Court of having to resolve such latter cause of action.

**I.**    **Objection to the Debtors' Discharges under § 727(a)(2) - (5).**

Section 727(a)(2) - (5) generally provide that a debtor shall be denied a

discharge if:

(2)  the debtor, with intent to hinder, delay, or defraud a creditor or

an officer of the estate charged with custody of property under this

title, has transferred, removed, destroyed, mutilated, or concealed,

or has permitted to be transferred, removed, destroyed, mutilated,

or concealed –

(A)  property of the debtor, within one year before the date of

the filing of the petition; or

(B)  property of the estate, after the date of the filing of the

petition;

(3)  the debtor has concealed, destroyed, mutilated, falsified, or

failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the debtor's

financial condition or business transactions might be ascertained,

unless such act or failure to act was justified under all of the

circumstances of the case;

(4)  the debtor knowingly and fraudulently, in or in connection with

the case –

(A)  made a false oath or account;

...

(5)  the debtor has failed to explain satisfactorily, before

8

determination of denial of discharge under this paragraph, any loss
of assets or deficiency of assets to meet the debtor's liabilities.

"The burden of proving a ground for objection to discharge is on the objector."  6
Collier on Bankruptcy, ¶ 727.01[2] at 727-8 (Bender 2010).  Such burden need
be met only by a preponderance of the evidence.  *See* Id.

Sherwood contends generally that the Debtors' discharges should be
denied under § 727(a)(2) because, according to Sherwood, the Debtors (a)
concealed artwork inventory of the Art Galleries both prior and subsequent to
when they filed for bankruptcy, and (b) then transferred some of such artwork
post-petition.

Sherwood contends generally that the Debtors should not receive their
discharges pursuant to § 727(a)(3) because, according to Sherwood, they
unjustifiably failed to keep or preserve recorded information from which one can
ascertain the financial condition or business transactions of the Art Galleries.

Sherwood generally opposes the Debtors' discharges under
§ 727(a)(4)(A) on the ground that both of the Debtors made false oaths in their
bankruptcy schedules, and that Mr. Burrik also made false oaths at the § 341
Meetings of Creditors.

Finally, Sherwood contends generally that the Debtors' discharges should
be denied under § 727(a)(5) on the ground that they have failed to explain what
happened to much of the artwork inventory that the Art Galleries possessed prior
to the Debtors' bankruptcy petition filing.

9

A.   **Mrs. Burrik's Discharge.**

Sherwood's discharge objections under § 727(a)(2), (a)(3), and (a)(5) with respect to Mrs. Burrik are all predicated on the position either (a) that Mrs. Burrik, as well as Mr. Burrik, owned the Art Galleries, or (b) that Mrs. Burrik, as well as Mr. Burrik, individually owned the personalty that was used to operate the Art Galleries.  Unfortunately for Sherwood, the Court finds that Sherwood has failed to preponderantly prove that Mrs. Burrik either owned the Art Galleries or owned the personalty that was used to operate the Art Galleries.  The Court so rules for several reasons.

First, Sherwood could not produce or point to any formal document that establishes that Mrs. Burrik was an owner of the Art Galleries.  As well, Sherwood at trial could preponderantly prove no more than that Mrs. Burrik did some work on events for the Art Galleries and performed some record keeping functions for the Art Galleries.  Such, by itself, is insufficient to preponderantly establish that Mrs. Burrik was some sort of de facto owner of the Art Galleries.  Furthermore, none of Mrs. Burrik's testimony, even on cross examination, supports a finding that she owned the Art Galleries.  Therefore, the Court finds that Mrs. Burrik did not own any of the Art Galleries.

Second, the Debtors' bankruptcy schedules indicate that the personalty that was used to operate the Art Galleries, if it belonged to one of the individual Debtors, was only owned by Mr. Burrik.  Sherwood failed to preponderantly prove to the contrary.  Therefore, the Court finds that Mrs. Burrik did not own any of the personalty that was used to operate the Art Galleries.

10

Therefore, the Court cannot deny Mrs. Burrik's discharge under § 727(a)(2) on the ground that she concealed and later transferred artwork inventory that belonged to or was utilized to operate the Art Galleries since such artwork was neither her property nor property of her bankruptcy estate.  As well, the Court cannot deny Mrs. Burrik's discharge under § 727(a)(3) on the ground that she unjustifiably failed to keep or preserve recorded information from which one can ascertain the financial condition or business transactions of the Art Galleries since (a) she neither owned nor operated the Art Galleries, and (b) the financial condition and business transactions of the Art Galleries have nothing to do with her own financial condition and business transactions.  Finally, the Court cannot deny Mrs. Burrik's discharge under § 727(a)(5) on the ground that she has failed to explain what happened to much of the artwork that the Art Galleries possessed prior to the Debtors' bankruptcy petition filing since (a) such artwork was not her own, and (b) she is only obligated under § 727(a)(5) to explain the loss or deficiency of her own assets in relation to her own liabilities.

As for Sherwood's discharge objection under § 727(a)(4)(A) with respect to Mrs. Burrik, the same is based on (a) statements that she made in her bankruptcy schedules, and (b) her signed declaration in such statements to the effect that she had read them coupled with her testimony that she signed such schedules without having read them.  The Court must overrule such objection because it finds that Sherwood has not preponderantly proven that Mrs. Burrik intended to deceive when she made such statements and affixed her signature to her bankruptcy schedules.

11

For all of the foregoing reasons, the Court must overrule the entirety of Sherwood's objection to Mrs. Burrik's discharge.

### B.    Mr. Burrik's Discharge.

As an initial matter, the Court notes that, even after the benefit of a three-day trial, it has no idea, and therefore cannot determine, whether Mr. Burrik (a) concealed artwork inventory of the Art Galleries either prior or subsequent to when the Debtors filed for bankruptcy, or (b) transferred some of such artwork post-petition. Consequently, the Court is constrained to find that Sherwood did not preponderantly prove that Mr. Burrik so concealed or so transferred such artwork. Therefore, the Court cannot deny Mr. Burrik's discharge under § 727(a)(2).

Because Sherwood has not preponderantly proven that Mr. Burrik actionably concealed or transferred artwork inventory of the Art Galleries, the Court must also find that Sherwood has not preponderantly proven that Mr. Burrik uttered false oaths, let alone fraudulent false oaths, in his bankruptcy schedules or at the § 341 Meetings of Creditors regarding such artwork inventory. For that reason, Mr. Burrik's discharge cannot be denied pursuant to § 727(a)(4)(A).

However, the Court, for the reasons set forth below, must sustain Sherwood's objection to Mr. Burrik's discharge pursuant to § 727(a)(3) and (a)(5).

12

(i)    **§ 727(a)(3).**

As the Third Circuit has stated in <u>Meridian Bank v. Alten</u>, 958 F.2d 1226

(3rd Cir. 1992):

> The purpose of section 727(a)(3) is to give creditors and the
>
> bankruptcy court complete and accurate information concerning the
>
> status of the debtor's affairs and to test the completeness of the
>
> disclosure requisite to a discharge.  The statute also ensures that
>
> the trustee and creditors are supplied with dependable information
>
> on which they can rely in tracing a debtor's financial history.

<u>Meridian Bank</u>, 958 F.2d at 1230 (citations omitted).  A creditor who objects to

the entry of a debtor's discharge under § 727(a)(3) has the initial burden of

proving "(1) that the debtor failed to maintain and preserve adequate records,

and (2) that such failure makes it impossible to ascertain the debtor's financial

condition and material business transactions."  <u>Id.</u> at 1232.  Once a "creditor

make[s] an initial showing that the debtor's records are inadequate ... the burden

is [then] on the debtor to prove justification [for said inadequacies]."  <u>Id.</u> at 1233.

The respective burdens of proof placed upon an objecting creditor and the debtor

under § 727(a)(3) are that of persuasion, *see* <u>Id.</u>, and said burdens must be met

by a preponderance of the evidence.  *See* <u>In re Ishkhanian</u>, 210 B.R. 944, 949

(Bankr.E.D.Pa. 1997) (relying on <u>Grogan v. Garner</u>, 498 U.S. 279, 285-91, 111

S.Ct. 654, 658-61, 112 L.Ed.2d 755 (1991)).

Several important points should be made regarding the adequacy of a

debtor's records.  First, "said records may be neither (a) 'chaotic or incomplete,'

13

(b) in such a condition that a creditor is 'required to speculate as to the financial history or condition of the debtor,' nor (c) in such a condition that a 'creditor [is compelled] to organize and reconstruct the debtor's business affairs.'" In re Buzzelli, 246 B.R. 75, 96 (Bankr.W.D.Pa. 2000) (internal citations omitted). Second, "[o]ral testimony is not a valid substitute or supplement for concrete written records," In re Juzwiak, 89 F.3d 424, 429-30 (7th Cir. 1996), which means that records are inadequate if gaps therein exist that can only be filled by the oral testimony of a debtor, see Buzzelli, 246 B.R. at 97.  Third, a debtor's records must be such that ""[c]reditors ... [need] not be forced to undertake an independent investigation of a debtor's affairs.'" Juzwiak, 89 F.3d at 429; Buzzelli, 246 B.R. at 96-97 (quoting Juzwiak).  Fourth, "[t]he more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records are supposed to be," In re Pulos, 168 B.R. 682, 692 (Bankr.D.Minn. 1994); therefore, a debtor who runs "a business enterprise engaged in a steady stream of large scale transactions involving substantial sums of money," in contrast to a typical consumer debtor, must maintain detailed financial records, Juzwiak, 89 F.3d at 428.

As for the separate "impossibility" requirement imposed by the Third Circuit in Meridian Bank upon an objecting creditor, such requirement

can necessarily mean no more than that a creditor, in order to

prevail under § 727(a)(3), must demonstrate that the state of a

debtor's recorded information is such that a creditor cannot possibly

ascertain said debtor's financial condition and material business

14

transactions without organizing, reconstructing, independently

investigating, and/or accepting oral representations by said debtor

regarding said debtor's affairs.

Buzzelli, 246 B.R. at 97 (noting that "[w]ere the 'impossibility' requirement to be

construed otherwise, then most, if not all, debtors would prevail under § 727(a)(3)

... because a creditor, if it expends an infinite amount of time, money, and effort

..., will likely be able to ultimately ascertain a debtor's financial condition and

material business transactions").

Regarding a debtor's burden to prove justification for his or her failure to

maintain and preserve adequate records, "[t]he Bankruptcy Code does not

specify what constitutes justification for maintaining inadequate records; instead

it requires the trier of fact to make a determination based on all the

circumstances of the case." Meridian Bank, 958 F.2d at 1231. "But it has been

held that inherent in the duty to produce records from which the debtor's financial

condition can be ascertained is the duty to take reasonable precautions for the

preservation of those records." 6 Collier on Bankruptcy, ¶ 727.03[3][c] at 727-34

(Bender 2010).

Finally, "creditors do not need to prove that the debtor intended to defraud

them in order to demonstrate a § 727(a)(3) violation." Juzwiak, 89 F.3d at 430;

see also Meridian Bank, 958 F.2d at 1234 ("the court need not find that the

debtor intended to conceal his financial condition" in order for a creditor to prevail

under § 727(a)(3)); 6 Collier on Bankruptcy, ¶ 727.03[3][d] at 727-35 ("Intent to

defraud or to conceal the debtor's financial condition is not a requisite element to

15

be specifically proved for a denial of discharge under section 727(a)(3)").

Applying the foregoing law to Mr. Burrik, the Court concludes, at the outset, that it must treat the business of the Art Galleries as also that of Mr. Burrik personally, at least for purposes of § 727(a) and, in particular, § 727(a)(3) and (a)(5).  The Court so finds even though Mr. Burrik appears to have conducted at least some portion of the business of the Art Galleries through Westmoreland Galleries, LLC, a wholly-owned corporation of his.  The Court is constrained to rule that the business of the Art Galleries is also that of Mr. Burrik personally because, *inter alia*, (a) he also conducted business of the Art Galleries under four other fictitious names, none of which were registered with an appropriate authority such as Pennsylvania's Department of State, (b) he personally owned all of the personalty of the Art Galleries, as indicated in his individual Bankruptcy Schedule B, and (c) he operated the Art Galleries in large part as if there were no corporate form between them and himself (i.e., as his alter ego), as evidenced by, for instance, the fact, as testified to by the Debtors, that the checking account established for the Art Galleries was utilized to pay not only business expenses but also certain of the Debtors' nonbusiness and personal living expenses.  The Court also notes that Westmoreland Galleries, LLC, also a bankrupt debtor, is undoubtedly an insider of Mr. Burrik and that, therefore, Mr. Burrik, pursuant to 11 U.S.C. § 727(a)(7), can be denied his discharge for any act that he committed under § 727(a)(3) and (a)(5) respective of such insider within one year before he filed his individual bankruptcy petition.

The Court next concludes that, because of the level of the Art Galleries'

16

business operations – i.e., an enterprise that supposedly generated over $1 million in sales as recently as 2007 – Mr. Burrik needed to keep and preserve records regarding the same with a level of detail far greater than that which would be required of a typical consumer debtor.

The Court next holds that Mr. Burrik failed to keep or preserve sufficient recorded information so that the Art Galleries' – and thus his – true financial condition and business transactions could be ascertained. The Court so concludes for several reasons. First, Mr. Burrik failed to keep or preserve records from which one can ascertain what artwork inventory of the Art Galleries was truly sold within the two years prior to when Mr. Burrik filed for bankruptcy. In that regard, Mr. Burrik testified that he failed to keep any sort of written inventory of the artwork that the Art Galleries possessed when Mr. Burrik filed for bankruptcy, or a running inventory of the Art Galleries' product at any given prior point in time. Such records, the Court concludes, should have been maintained for an enterprise that is, or was, the size of the Art Galleries. Perhaps more importantly, what Mr. Burrik did produce in the way of records regarding sales of the Art Galleries' inventory was some sales invoices for the years from 2007 to 2009. However, such invoices do not come close to documenting the level of sales that Mr. Burrik's federal income tax returns for 2007 - 2009 indicate were generated by the Art Galleries.[1] The Court finds that none of the other records

---

[1]According to Sherwood, such invoices document sales for (a) 2007 of $189,751, which amount constitutes but 18% of the $1,027,547 worth of sales that are reported on the Debtors' 2007 income tax return, (b) 2008 of $153,852, which amount constitutes but 45% of the $336,341.62 worth of sales that are

17

produced by Mr. Burrik can be resorted to in order to verify the level of sales for the Art Galleries that are reported in the 2007 - 2009 income tax returns. Such verification is essential because Sherwood contends that, and certainly as a party in interest has every right to question whether, Mr. Burrik did not sell, but instead concealed, some of the Art Galleries' inventory that Mr. Burrik steadfastly maintains was sold in 2007 - 2009. Detail sufficient to allow for such verification is also that which, the Court concludes, is to be expected for a business enterprise that is, or was, the size of the Art Galleries.

Second, Mr. Burrik appears to have continued to sell artwork subsequent to his having filed for bankruptcy, which fact understandably elevates the suspicions of Sherwood that Mr. Burrik has concealed some of the Art Galleries' inventory that is supposed to either have been sold pre-petition or have been handed over to the Chapter 7 Trustee of Mr. Burrik's bankruptcy estate. Mr. Burrik offered at trial an explanation for his post-petition sales activity. He contends that some of such activity is attributable to the sale of artwork that has been consigned to him by others post-petition. He also maintains that some of the artwork that he appears to be, or appears to have been, advertising for sale post-petition is actually artwork of the Art Galleries that was sold pre-petition that he is now marketing anew for the benefit of those who made such pre-petition purchases. Finally, he asserts that some of the post-petition advertising

---

reported on the Debtors' 2008 income tax return, and (c) 2009 of $32,197, which amount constitutes but 37% of the $86,858 worth of sales that are reported on the Debtors' 2009 income tax return.

18

materials that Sherwood questioned him about at trial are simply inaccurate, either because of such advertisers' errors or those of his own.  Such oral explanations of Mr. Burrik by themselves, as set forth above, cannot satisfy Mr. Burrik's obligation to maintain adequate records.  Instead, as also set forth above, such explanations by Mr. Burrik must be susceptible of verification and, as it turns out, such explanations cannot be verified by resort to any type of documentation that Mr. Burrik has kept or preserved.  The Court concludes that the maintenance and preservation of such documentation is to be expected for one like Mr. Burrik who supposedly engages in the business of selling artwork that belongs to others, particularly in the circumstance when one, like Mr. Burrik, has previously sold artwork and then filed for bankruptcy.

Third, the records produced by Mr. Burrik do not adequately substantiate any of the business expenses of the Art Galleries that were reported on the Debtors' 2007 - 2009 federal income tax returns.  Such records, the Court concludes, should have been kept and preserved for an enterprise like the Art Galleries.  Furthermore, the lack of such records makes impossible any verification of such expenses, which, in turn, makes it impossible for one to verify the true financial condition of the Art Galleries.

Fourth, and in a similar vein, the Court concludes that the bank statements and checking account records retained by Mr. Burrik are woefully inadequate when measured against the type of deposit records that should have been kept and preserved for an enterprise that is, or was, the size of the Art Galleries. Because of the relative dearth of documentation regarding the deposits of

19

proceeds that stemmed from the sale of the inventory of the Art Galleries, one cannot practically verify the true financial condition of the Art Galleries.

Fifth and finally, Mr. Burrik argues that he should prevail under § 727(a)(3) because he has produced a lot of records regarding the Art Galleries during the course of the instant adversary proceeding, and what he has so produced is enough to demonstrate that (a) the Art Galleries are now financially insolvent, and (b) they are in such condition because of (i) the Debtors' preoccupation with their son's illness, and (ii) the downfall in the economy in 2008. Mr. Burrik also contends that the Debtors' federal income tax records are largely explanative of the Art Galleries' financial condition, and so they should serve to largely satisfy the record keeping requirement of § 727(a)(3). The Court disagrees with all of the foregoing contentions. First, the quantity of records that Mr. Burrik has kept and preserved is neither dispositive nor even demonstrative of the adequacy of such records. Also, that records produced by Mr. Burrik are supportive of the fact that the Art Galleries are insolvent, as well as the contention that such insolvency is attributable to the two causes identified by Mr. Burrik, does not, by itself, serve to make such records adequate for purposes of § 727(a)(3). In that regard, because such records are replete with gaps, indeed are deplorably incomplete, one can neither eliminate any number of other explanations for why the Art Galleries are now insolvent nor, therefore, verify that the downfall of the Art Galleries is attributable to the two foregoing causes identified by Mr. Burrik. That being the case, the Court must conclude that the records that Mr. Burrik has kept and preserved regarding the Art Galleries are simply not adequate within the

20

meaning of § 727(a)(3).  Finally, tax returns, as a matter of law, "neither

themselves constitute adequate documentation, nor evidence adequate

recordkeeping by ... [Mr. Burrik], for purposes of § 727(a)(3)."  Buzzelli, 246 B.R.

at 104.  Such is the case because of the utter lack of detail contained in tax

returns.  *See* Id.

The Court next holds that Sherwood has preponderantly established that

Mr. Burrik's failure to maintain and preserve adequate records regarding the Art

Galleries makes it impossible for one to determine the financial condition and

material business transactions of the Art Galleries and, thus, Mr. Burrik himself.

In so holding, the Court properly disregards (a) the possibility that Sherwood

could have made the requisite determinations had Sherwood itself undertook to

independently investigate the Art Galleries, and (b) the fact that Sherwood could

have simply acquiesced and blindly accepted the oral representations by Mr.

Burrik regarding the Art Galleries' affairs.

In light of all of the foregoing holdings regarding Sherwood and its

§ 727(a)(3) cause of action against Mr. Burrik, Sherwood has carried its burden

of proof respecting such cause of action, thereby causing the burden to shift to

Mr. Burrik to preponderantly prove a justification for his failure to maintain and

preserve adequate records regarding the Art Galleries.  Mr. Burrik attempts to

provide several justifications for the inadequacy of his records respecting the Art

Galleries, namely:

(a)     that, at some point prior to when he filed for bankruptcy, Mr. Burrik sold

        the two computers that stored many of the Art Galleries' business records,

21

and that he neglected, for whatever reason, to remove such records from

such computers before they were sold;

(b)    that he had to lay off his bookkeeper, and cease using his accountant,

when the business operations of the Art Galleries began to deteriorate in

2008, and that neither he nor Mrs. Burrik were thereafter fully capable of

handling the function of keeping records for the Art Galleries; and

(c)    that he lost a significant portion of the remaining business records

regarding the Art Galleries when he abandoned them at, and along with,

the Commercial Warehouse simultaneous to the closing of the Art

Galleries.

As an initial matter, the Court doubts that Mr. Burrik, simply by virtue of the

unsubstantiated testimony of himself and Mrs. Burrik, has preponderantly proven

that (a) business records of the Art Galleries were stored on two computers, (b)

such computers were actually sold, (c) such records were accidentally not

retrieved prior to the sale of such computers, (d) he had to lay off his bookkeeper

and cease using his accountant in 2008, (e) neither he nor Mrs. Burrik were fully

capable of handling the record keeping duties of the Art Galleries thereafter, (f)

he abandoned all the remaining business records of the Art Galleries when he

handed the keys to the Commercial Warehouse over to S & T Bank, or (g) such

abandonment of business records simultaneous with the abandonment of the

Commercial Warehouse was purely accidental.  However, even accepting

*arguendo* that all of the foregoing has been preponderantly established by Mr.

Burrik, such explanations nevertheless fail to constitute justification – or at least

22

legally sufficient justification within the meaning of § 727(a)(3) – for the lack of adequate records regarding the Art Galleries.  The Court so holds for several reasons.

First, if Mr. Burrik actually abandoned business records of the Art Galleries when he also handed over the keys of the Commercial Warehouse to S & T Bank, he was negligent in so doing.  The Court so holds because S & T Bank had no interest in possessing such records when they took over possession of the Commercial Warehouse, which fact Mr. Burrik should have been aware of at the time.  The Court finds that Mr. Burrik completely abdicated his duty to take reasonable precautions for the preservation of such records, and he had no justification for such negligent act.  *See* In re Devine, 11 B.R. 487, 488-89 (Bankr.D.Mass. 1981) (debtor's negligent failure to salvage business records when he abandoned business premises was not justified).  Therefore, that he perhaps lost some records by virtue of such abandonment of records does not amount to a legal justification for the consequent lack of adequate records regarding the Art Galleries.  *See* Id.

Second, if Mr. Burrik actually failed to retrieve business records from computers that he used to store business records of the Art Galleries before he sold off such computers, then he thereby also acted negligently by failing to take reasonable precautions for the preservation of such records.  The Court finds that Mr. Burrik had no justification for such negligent act.  *See* In re Scott, 172 F.3d 959, 969 (7th Cir. 1999) (essentially same holding as in Devine for failure to take reasonable precautions regarding computer records and backup tapes).

23

Therefore, that he perhaps lost some records by virtue of the supposed sale of such computers does not amount to a legal justification for the consequent lack of adequate records regarding the Art Galleries. *See* Id.

Finally, if Mr. Burrik was forced to assume the duty of keeping records for the Art Galleries because he could then no longer afford to retain the services of his bookkeeper and accountant, then it was incumbent upon him to quickly get himself up to speed with respect to such record keeping, particularly given that he was fully aware at the time that the performance of the Art Galleries' business operations was beginning to suffer. That Mr. Burrik, by his own concession, did not do what he needed to do to ensure that such record keeping duties were adequately performed going forward constitutes negligence on his part, for which there is no justification. Therefore, that the adequacy of the Art Galleries' records suffered as a result of the loss of Mr. Burrik's bookkeeper and accountant does not amount to a legal justification for such records' inadequacy.

For all of the foregoing reasons, Mr. Burrik's discharge must be denied pursuant to § 727(a)(3).

**(ii)    § 727(a)(5).**

"11 U.S.C. § 727(a)(5) is designed to work in tandem with § 727(a)(3), to foster the same process of investigation and disclosure [promoted by § 727(a)(3)]." In re Johnson, 80 B.R. 953, 960 n.8 (Bankr.D.Minn. 1987). "Under this section of the Code, the plaintiff has the initial burden of identifying the assets in question by appropriate allegations in the complaint and showing that the debtor at one time had the assets but they are no longer available for the

debtor's creditors." In re Potter, 88 B.R. 843, 849 (Bankr.N.D.Ill. 1988).

"Once the creditor has introduced some evidence of the disappearance of substantial assets, the burden shifts to the debtor to explain satisfactorily the losses or deficiencies." Id. "What constitutes a 'satisfactory' explanation [on a debtor's part] is left to the discretion of the Court." Id. However, in that regard,

the majority of courts ... hold ..., for instance, that (a) "[a] creditor is not required to rely on a debtor's [mere] statement that he no longer has certain assets," (b) a "debtor's explanation must consist of more than [a] 'vague[,] indefinite[,] and uncorroborated hodgepodge of financial transactions,'" (c) "[e]xplanations consisting of mere generalities and founded upon nothing by way of verification or affirmation in books, records or otherwise is not satisfactory," and (d) "[v]ague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."

Buzzelli, 246 B.R. at 117 (internal citations omitted).

Finally, "[a]s is the case with respect to an action under § 727(a)(3), '[t]here is no requirement that a debtor act fraudulently or intentionally in order for a plaintiff to sustain objections to discharge based upon § 727(a)(5).'" Id. at 116 (quoting In re Carter, 236 B.R. 173, 180 (Bankr.E.D.Pa. 1999)).

Applying the foregoing law to Mr. Burrik, the Court first holds that Sherwood has carried its initial burden of identifying assets that the Art Galleries had at one time, but which are no longer available for Mr. Burrik's creditors. In

25

that regard, the Court notes that Sherwood identifies (a) the artwork that it

consigned to the Art Galleries, (b) the artwork that the Art Galleries acquired from

the Thomas Kinkade Company simultaneous with Mr. Burrik's incurrence of debt

owed to such company in the amount of $293,534.35, (c) particular pieces of

valuable artwork, and (d) all of the artwork generally that Mr. Burrik acquired for

the Art Galleries that was purportedly sold during the years from 2007 through

2009.  Because Sherwood has carried its burden, the burden then shifts to Mr.

Burrik to satisfactorily explain what happened to such assets.

The Court will confine its analysis to two of the four preceding groupings of

artwork inventory when assessing whether Mr. Burrik has provided satisfactory

explanations regarding what happened to the same.  In particular, the Court

focuses on the $293,534.35 worth of artwork that was purchased from the

Thomas Kinkade Company, as well as all of the artwork generally that Mr. Burrik

acquired for the Art Galleries that was purportedly sold during the years from

2007 through 2009.  With respect to both groups of assets, Mr. Burrik testified

that the same was sold in its entirety.  The Court concludes that such oral

explanation as to what happened to such assets is unsatisfactory.  The Court so

holds because, as was just set forth in the Court's analysis regarding the

application of § 727(a)(3) to Mr. Burrik, that such artwork inventory was sold

cannot be corroborated by resort to any written records or documentation; rather,

all that Sherwood and the Court have to go on with respect to such oral

explanation is the explanation itself.  As set forth above, oral statements as to

what happened to assets, without anything in the way of corroboration via written

26

records or documentation, constitute unsatisfactory explanations for purposes of § 727(a)(5).

Therefore, and for all of the foregoing reasons, Mr. Burrik's discharge must be denied pursuant to § 727(a)(5) as well.

## II.   Nondischargeability of Sherwood's Claim under § 523(a)(4).

As an initial matter, Sherwood's § 523(a)(4) nondischargeability action as against Mr. Burrik is rendered moot by the Court's decision to sustain Sherwood's objection to his discharge.  Therefore, the Court need concern itself only with whether Sherwood's claim should be excepted from Mrs. Burrik's discharge pursuant to § 523(a)(4).

Section 523(a)(4) provides, in pertinent part, that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity."  11 U.S.C.A. § 523(a)(4) (West 2011).  "[T]he creditor bears the burden of proof in a proceeding to determine the dischargeability of a debt under section 523(a)(4)."  4 Collier on Bankruptcy, ¶ 523.10[1][c] at 523-72 (Bender 2010).

The precise basis for Sherwood's § 523(a)(4) cause of action as against Mrs. Burrik is unclear.  In particular, Sherwood can prevail under § 523(a)(4) as against Mrs. Burrik only if Sherwood can preponderantly demonstrate that she was a fiduciary with respect to Sherwood within the meaning of § 523(a)(4).

In Sherwood's complaint, Sherwood maintains that its claim should be excepted from discharge under § 523(a)(4) because (a) it consigned artwork to the Art Galleries, and (b) a clause in the consignment agreements between

27

Sherwood and the Art Galleries relevant to such consigned artwork establishes

that such artwork and the proceeds from its sale were to be segregated and held

by the Art Galleries in trust for Sherwood.  However, in Sherwood's post-trial

brief, it is clear that Sherwood maintains that Mr. Burrik is the defendant that it

contends was the fiduciary by virtue of such consignment agreements.  Such is

actually consistent with the fact that (a) Mr. Burrik is a signatory to such

consignment agreements while Mrs. Burrik is not, and (b) Sherwood's Minnesota

state court judgment is against Mr. Burrik but not against Mrs. Burrik.

The Court is aware that Sherwood has maintained at times during the

course of the instant adversary proceeding that the Art Galleries are also the

businesses of Mrs. Burrik.  Therefore, the Court must surmise that what

Sherwood ultimately contends is that she is also thereby a fiduciary of Sherwood.

Having so framed Sherwood's § 523(a)(4) cause of action against Mrs.

Burrik, the Court must instantly rule against Sherwood because the Court, as set

forth above when dealing with Sherwood's objection to Mrs. Burrik's discharge,

finds that Sherwood has not preponderantly proven that Mrs. Burrik owned, even

in part, the Art Galleries.  Therefore, the Court is constrained to rule that Mrs.

Burrik was not a fiduciary with respect to Sherwood, which means that

Sherwood's claim cannot be excepted from her discharge pursuant to

§ 523(a)(4), that is such claim must be discharged as to Mrs. Burrik.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court overrules Sherwood's objection

to the entry of Mrs. Burrik's discharge and, pursuant to § 727(a)(3) and (a)(5),

sustains Sherwood's objection to the entry of Mr. Burrik's discharge.  The Court

also determines that, as to Mrs. Burrik, Sherwood's claim is discharged, that is

such claim is not excepted from her discharge pursuant to § 523(a)(4).  Because

the Court denies the entry of Mr. Burrik's discharge, Sherwood's § 523(a)(4)

nondischargeability action against him is moot.

**BY THE COURT**


**/s/**
**BERNARD MARKOVITZ,**
**U.S. Bankruptcy Judge**

**DATED:**      **November 30, 2011**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **STEPHEN E. BURRIK &** | : | |
| **INDIA R. BURRIK,** | : | **Bankruptcy No. 09-29569-BM** |
| | : | |
| Debtors. | : | |

...................................................:.............................................................................

|  |  |  |
|---|---|---|
| **Sherwood Fine Art, Inc.,** | : | |
| Plaintiff, | : | **Chapter 7** |
| | : | |
| v. | : | |
| | : | **Adversary No. 10-2215-BM** |
| **Stephen E. Burrik & India R. Burrik,** | : | |
| Defendants. | : | |

## <u>ORDER OF COURT</u>

**AND NOW,** this **30th day** of **November, 2011**, for the reasons, and utilizing the nomenclature, set forth in the accompanying Memorandum Opinion of the same date; it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a)     Sherwood's objection to the entry of Mrs. Burrik's discharge is

      **OVERRULED**;

(b)     Sherwood's objection to the entry of Mr. Burrik's discharge is **SUSTAINED**

      pursuant to § 727(a)(3) and (a)(5);

(c)     Sherwood's claim is discharged as to Mrs. Burrik, that is such claim **is not**

      **excepted from her discharge** pursuant to § 523(a)(4); and

(d)     Sherwood's § 523(a)(4) nondischargeability action against Mr. Burrik is

**moot** because the Court denies the entry of his discharge.

                                        **BY THE COURT**


                                        **/s/**_____
                                        **BERNARD MARKOVITZ,**
                                        **U.S. Bankruptcy Judge**

cm:     Brian P. Cavanaugh, Esq.
        Andrew M. Gross, Esq.
        Charles O. Zebley, Jr., Esq., Ch. 7 Trustee
        (to be served electronically by case administrator)